693 A.2d 955

CARTERET HOUSING AUTHORITY, PLAINTIFF,
v. DEBBIE GILBERT, DEFENDANT.

Superior Court of New Jersey
Law Division, Special Civil Part
Middlesex County

Decided January 27, 1997.

*Mark S. Cholowski*, for plaintiff.

*Rabbia Ashraf*, for defendant.

PALEY, J.S.C.

This matter involves an issue not addressed earlier in any reported case in this state, namely, may a public housing authority compel a member of a tenant's family who is under age to move from an apartment, because no adult resides there?

The Carteret Housing Authority provides public housing within the Borough of Carteret, New Jersey. Apartments maintained by the Authority are subject to the United States Department of Housing and Urban Development Section 8 Housing Assistance Program for Substantial Rehabilitation. *See* 42 *U.S.C.A.* 1437 *et seq.;* the United States Housing Act of 1937.

Because rent was not paid for one month, the Authority filed a complaint seeking summary dispossession pursuant to *N.J.S.A.* 2A:18–61.1, through 61.12, against Debbie Gilbert, tenant of Apartment 8, Building H, in the Edward J. Dolan Homes, Bergen Street, in Carteret. When defendant failed to respond to the complaint, judgment for possession was entered. Plaintiff then obtained a warrant of removal in the normal course and served it at the apartment. Samantha Gilbert (Samantha), daughter of the defendant, then wrote to the court to request a stay of the warrant, pursuant to *N.J.S.A.* 2A:42–10.1. Based on that letter, the court granted a stay of the warrant pending a hearing. On the day before that hearing, Samantha, represented by Middlesex County Legal Services Corporation, formally moved to vacate the judgment of possession.

For the reasons articulated below, the court grants defendant's application to vacate the judgment of possession. This opinion is an expansion of the decision on that motion placed on the record on January 27, 1997.

On or about September 1, 1988, the authority leased the apartment in question to defendant on a month-to-month basis. At all relevant times, the monthly rent due from the tenant was $35.00. Plaintiff's complaint contended that defendant owed August rent of $35.00, plus a $25.00 late fee; after plaintiff obtained its judgment for possession, it certified that the aggregate indebtedness of defendant as of October 15, 1996, was $208.00 ($105.00 unpaid rent, $75.00 late fees, and $28.00 court costs).

The uncontroverted affidavits presented to the court reflect that Samantha was born in September, 1979. Since 1988, Samantha lived with her mother in the subject apartment; she is listed on

the lease as an occupant. Two years ago, Samantha gave birth to her own child, who has lived in the same apartment since birth. For some time, Samantha has received public assistance for herself and her child through her own grant from the Middlesex County Board of Social Services (Board).

During October, 1996, defendant was sentenced to a term of imprisonment in a New Jersey penal institution which will last until at least July, 1997, and had paid no rent after her incarceration. Upon review of Samantha's letter, the court required that Samantha post $208.00 with the court; she obtained the funds from the Board and complied with the requirement. Samantha also entered into a "protective payee agreement" with the Board, whereby the Board will pay future monthly rent of $37.00 directly to plaintiff.

In *Housing Authority of Town of Morristown v. Little*, 135 *N.J.* 274, 639 *A.*2d 286 (1994), our Supreme Court *held* that, where a tenant in a public housing development had paid rent due shortly after a warrant of removal had issued, the trial court should vacate a judgment of possession, in light of the status of the publicly-subsidized provider of housing as housing of last resort. 135 *N.J.* at 291, 639 *A.*2d 286; *see N.J.S.A.* 40A:12A–16(a)(11). Here, however, the rub is that Samantha is not the "tenant"; furthermore, she is not of sufficient age to contract in her own behalf. *See N.J.S.A.* 9:17B–1(d).

The United States Congress and New Jersey's Legislature have addressed the age of users of housing in varying, but limited, ways. 42 *U.S.C.A.* 6102 provides:

... no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance.

*N.J.S.A.* 2A:42–101 provides:

No person, firm or corporation or any agent, officer or employee thereof shall refuse to rent or lease any house or apartment to another person because his family includes children under 14 years of age or shall make an agreement, ..., which provides that the agreement, ... shall be rendered null and void upon the birth of a child.

There appears to be no legislative authority which establishes any minimum age limit for the occupants of federally-subsidized housing. In New Jersey, of course, as in other jurisdictions, persons under age may not enter into binding contracts. *Cf. N.J.S.A.* 9:17B–1(d).

The United States Housing Act of 1937 addresses the occupancy of housing units subject to that act as follows:

Dwelling units assisted under this chapter shall be rented only to families who are low-income families at the time of their initial occupancy of such units.

[42 *U.S.C.A.* 1437a(a)(1) ]

42 *U.S.C.A.* 1437a(b)(3)(A) provides, further:

The term 'families' includes families consisting of a single person in the case of (i) an elderly person, (ii) a disabled person, (iii) a displaced person, (iv) the remaining member of a tenant family, and (v) any other single persons.

Clearly, by the plain language of that statute, Samantha Gilbert is a "remaining member of a tenant family". Research has disclosed no federal or state statute which places any age limit, or minimum age requirement, on the "remaining member of the tenant family". *Cf.* 24 *C.F.R.* 912.2(b).

Other jurisdictions which have considered the issue of housing requirements have not specifically addressed age. For example, in *NSA North Flatbush Associates v. Mackie, et al.,* 166 *Misc.*2d 446, 632 *N.Y.S.2d* 388 (Housing Part 18G, Civil Court of the City of New York, Kings County, 1995), the court noted that the term "remaining member of a tenant family" has not been defined by statute or administrative regulation. In that case the tenant, Jacob Mackie, died; his son, Lamont Mackie, alleged that he had occupied his father's apartment for twenty months before the tenant's death. The NSA court defined "remaining member of a tenant family" as "a person who had actually been in [bona fide] occupancy as a part of the family unit at the time of the named tenant's death." 166 *Misc.*2d at 450, 632 *N.Y.S.*2d 388. That court concluded, following several days of trial, that the occupant had proved his bona fide occupancy by a preponderance of the credible evidence.

To the extent that plaintiff may be concerned about entering into an agreement which may be disaffirmed by a minor under state law (*N.J.S.A.* 9:17B–2), that concern may be addressed and resolved productively by having Samantha obtain a decree of emancipation. In *Newburgh v. Arrigo*, 88 *N.J.* 529, 443 *A.*2d 1031 (1982), the Supreme Court recognized that the emancipation of a minor is fact-sensitive and, accordingly, held that there is no specific age for emancipation. Here, it is uncontroverted that defendant's term of incarceration will extend at least until July, 1997; therefore, the "fundamental dependent relationship between parent and child" has been terminated, thus establishing a de facto emancipation. *Bishop v. Bishop*, 287 *N.J.Super.* 593, 671 *A.*2d 644 (1995).

A seventeen-year-old person who has the capacity to apply for, and obtain, her own government grant-in-aid; to follow the instructions on a court warrant by seeking a stay of a warrant of removal; to comply with a court order by posting funds with the court; to obtain a supplemental grant providing the funds to be so deposited; and to maintain her household and her child without the day-to-day guidance of anyone older, clearly has the maturity and capacity to be responsible for her own affairs and to be considered emancipated for the purpose of continuing as a resident in her home.

The stay of the warrant of removal is governed by *N.J.S.A.* 2A:42–10.1:

> ... if it shall appear that by the issuance of the warrant ... the tenant will suffer hardship because of the unavailability of other dwelling accommodations the judge may stay the issuance of the warrant ... and cause the same to issue at such time as he shall deem proper under the circumstances, but in no case shall such judge stay the issuance of any such warrant ... for a longer period than 6 months after the date of entry of the judgment of possession.

Here this statute gives the court full authority to stay the issuance of the warrant of removal until April 15, 1997, six months after the entry of judgment. Samantha's circumstances will be no different on that date. Defendant will remain incarcerated; Samantha will still be a minor according to law. This is hardly a

satisfactory resolution. It is as unsatisfactory as evicting Samantha, under age according to law and unable to enter into a binding contract for alternative housing, from the home in which she has lived for nine years

For the foregoing reasons Samantha may continue in possession of the subject apartment, conditioned upon timely payment of all future rents (and other charges imposed by the lease, as applicable) as they fall due. Samantha will, furthermore, apply to the Family Part for an Order of Emancipation forthwith. An order to this effect was entered on January 27, 1997.